MATTHEW B. FAUGHNER AND WILLIAM A. FAUGHNER
v. MANUFACTURERS' MUTUAL FIRE
INSURANCE COMPANY.

*Fire insurance—Facts not establishing contract.*

A manufacturing firm applied verbally to an insurance broker for
insurance, who had a conversation with an attorney engaged
in making collections for an insurance company, but who was
not its agent or authorized to make contracts of insurance,
about insuring the applicants' property. The attorney took a
memorandum of the proposed risk in pencil, as he obtained it
from the broker, and either gave it or showed it to the secre-
tary and agent of the company at its office, after which he
wrote to the broker, inclosing an application partially filled
out, and which contained a blank space in which to state the
day from which the applicants desired the policy to run. He
signed the name of the secretary to this letter, in which it was
stated that the application could not be completed or policy
sent for want of knowledge of the applicants' names, and the
broker was requested to complete the application, and return
it, and the policy would be sent. The broker sent the applica-
tion to the applicants, who filled it out, excepting as to the
date from which the policy was to run, and it was returned
to the company by the broker, and upon examination by the
secretary was marked as rejected. Two or three days after-
wards the property was destroyed by fire, and in a suit to
recover the insurance it is held:

*a*—That the sending and retention of the application did not
constitute a contract of insurance.

*b*—That the contention of the applicants that the letter con-
taining the application was a proposition from the company to
insure, which was accepted by the applicants by filling out and
returning the application, is untenable.

*c*—That the applicants could not have been compelled to pay
the premium until the delivery of the policy, and had not
become members of the company.

Error to Gratiot.. (Daboll, J.)   Argued June 4, 1891.
Decided July 28, 1891.

*Assumpsit.* Defendant brings error. Reversed, and no new trial ordered. The facts are stated in the opinion.

*W. H. Haggerty* (*Moses Taggart*, of counsel), for appellant, contended for the doctrine of the opinion.

*George P. Stone* and *Clark & Norton,* for plaintiffs, contended:

1. Woodard was the legally authorized agent of the defendant. He was authorized to receive applications, deliver policies, and collect premiums for the company, and was clothed with the same authority as the agent of a stock company; citing *Russell v. Insurance Co.,* 80 Mich. 407.

2. A contract of insurance may be made by parol; citing *Insurance Co. v. Carrington,* 43 Mich. 252; *Insurance Co. v. Earle,* 33 Id. 153; and when the insured has accepted the terms proposed, and has performed on his part, the contract is complete, whether a policy has been issued or not; citing *Tayloee v. Insurance Co.,* 9 How. 390.

GRANT, J. Plaintiffs sued to recover a loss on an alleged contract of insurance. No policy was issued, and the question is whether the proofs established the contract. The court below left the question to the jury, who found for the plaintiffs.

Plaintiffs applied to one Woodard to effect an insurance upon their property. Woodard was a manufacturer, and did some insurance business. He was not the agent for the defendant. He was an insurance broker. He testified that he had no other arrangement with the defendant than to send on applications for parties desiring to be insured. He took and forwarded applications, and the company, if satisfied, issued and returned the policies. Woodard obtained one policy for plaintiffs in a Milwaukee company. He testified that he had no blank applications of the defendant; that he sent defendant by mail a diagram of the premises, together with a general description thereof; that he believed he used a blank of

some other company. He was unable to give any detail as to the contents of this application. About the same time he had a conversation with one Haggerty, an attorney, who was engaged at the time in making collections for the defendant, about insuring plaintiffs' property. Plaintiffs were engaged in a manufacturing business at Alma, Woodard resided and carried on business in Owosso, and the defendant's office was in Grand Rapids. In that conversation it does not appear that the plaintiffs names were mentioned, but the risk·was referred to as one at Alma. Woodard admitted that he had this talk with Haggerty. Haggerty had written a letter to Woodard, which will appear hereafter. Counsel for the defendant then asked Woodard the following question:

"Do you mean to say that that letter was written by him in reply to something else, instead of your talk with him?"

To this Woodard replied:

"I mean to say that I laid before the company a diagram and description of that property, sufficient for them to determine whether they would issue a policy or not, and this letter is a reply to that intelligence. I don't say to whom exactly, nor I don't remember exactly how that intelligence was furnished to that company; but I know it was furnished."

· Defendant's officer who had charge of all its correspondence testified positively that no such application or communication was ever received by the defendant.

Such testimony on the part of the plaintiffs does not rise to the dignity of evidence. It should not have been left to the consideration of the jury. Evidently the only information as to this risk the defendant received before that letter, and the application accompanying it, was obtained by Haggerty from Woodard in that conversation, and by him communicated to the agent of the company at Grand Rapids.

It is not claimed that Mr. Haggerty was the agent of the company, clothed with authority to make contracts of insurance. Nor is it claimed that the conversation between him and Woodard had any tendency to prove the contract. Haggerty simply took a pencil memorandum of the proposed risk, as he obtained it from Woodard, and either gave it or showed it to Mr. Granger, the agent, on his return to defendant's office. He then, on July 11, 1888, wrote to Mr. Woodard, as follows:

"Inclosed find application, partly filled out, for a policy on excelsior works at Alma. We cannot complete application or send you policy, because I don't know the parties' names. Have application filled out and sent to us, and we will return you policy at once. We also send you some applications in blank by same mail as this.
"Yours, etc.,
"A. M. GRANGER, Secretary,
"Per H."

Accompanying this letter was the application. In the body of this application was a space for the applicant to fill, specifying the day from which he desired the policy to run. Attached to the application was a deposit note, promising to pay all assessments made for losses and expenses incurred by the company. Upon receipt of this letter, Mr. Woodard sent the application to plaintiffs to fill out. Plaintiffs filled out the application, leaving the date from which the policy was to run unfilled. Woodard forwarded the application to defendant. Upon the back of this application was a blank arranged for a brief statement of the name of the insured, the amount, rate, etc., and also for stating whether the application was approved or rejected.

Mr. Granger, the agent of the defendant, who had authority to approve or reject, testified that he examined the application upon its receipt, and rejected it, writing the word "rejected" across the face of the application,

and also upon the back. Plaintiffs' property was destroyed by fire Sunday, July 22. The application had been received two or three days previous. The receipt and rejection were both previous to the fire.

The circuit judge instructed the jury that the letter, the forwarding of the application, and the retention of the application by the defendant, did not of themselves constitute a contract of insurance, but left it to them to consider this evidence, in connection with all the other evidence in the case, in determining the question. But there was no other evidence for them to consider. The facts were undisputed. The question must be determined entirely upon the letter written by Haggerty in the name of the secretary, and the application returned to the defendant. It therefore became a question of law for the court to say whether a contract existed. The court was therefore in error in leaving the question to the jury.

One other fact should be noted. Plaintiffs did not pay the premium, nor tender the same until September following, when they, by Woodard, sent a draft to the defendant for the amount, which it promptly returned. Plaintiffs and Woodard had mutual dealings. They made no special arrangement in regard to the premium. The subject of payment was not mentioned. Plaintiffs gave Woodard credit for the amount, and Woodard says he charged them with the premium on his account.

I think it clear that the contract of insurance between these parties was not complete. The sending and retention of an application does not make such a contract. Acceptance on the part of the insurer is necessary. Wood, Ins. (2d ed.), 42; May, Ins. § 50.

No question could therefore arise in the present case, were it not for the letter containing the application, which plaintiffs insist was a proposition from the defend-

ant to insure, and was accepted by the plaintiffs by filling out and returning the application. When the letter and application were sent, defendant did not know the names of the plaintiffs, nor was it fully informed as to the character and nature of the risk. Plaintiffs could not have been compelled to pay the premium until the policy had been delivered to them. They had not become members of the defendant. They had fixed no time .in their application from which they desired their policy to run.

I think the court should have directed a verdict for the defendant.

Judgment reversed, and no new trial ordered.

The other Justices concurred.